IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| EMPLOYERS MUTUAL CASUALTY COMPANY, | CV 19-129-BLG-TJC |
| Plaintiff/Counter-Defendant, | **ORDER** |
| vs. | |
| S.D. HELGESON, INC., *d/b/a* STAN HELGESON HOMES; SRKM, INC. *d/b/a* HELGESON HOMES; and DOES 1-5, | |
| Defendants/Counter-Claimants. | |
| vs. | |
| STEPHEN AND MARILYN KRAMER, | |
| Intervenor-Defendants. | |

Plaintiff Employers Mutual Casualty Company ("EMC") brought this action against Defendants S.D. Helgeson, Inc., *d/b/a* Stan Helgeson Homes; SRKM, Inc., *d/b/a/* Helgeson Homes (collectively "Helgeson"); and Does 1-5, seeking declaratory judgment on insurance coverage for claims brought against Helgeson by Intervenor Defendants Stephen and Marilyn Kramer ("Kramers") in the Montana Thirteenth Judicial District Court for Yellowstone County ("underlying

1

suit"). (Doc. 1.) In the underlying suit, Kramers seek to recover for property damage to their home in the Falcon Ridge subdivision in Billings, Montana, allegedly resulting from Helgeson's negligent construction. (*Id.* at ¶ 10.) EMC seeks declaratory judgment under the Declaratory Judgments Act, 28 U.S.C. § 2201, that it has no duty to defend nor an obligation to indemnify Helgeson in the underlying suit. (*Id.* at ¶ 2.)

Presently before the Court are three motions. First, EMC seeks summary judgment on insurance coverage for Kramers' claims against Helgeson in the underlying suit. (Doc. 30.) Second, Kramers move to dismiss EMC's claim under the *Wilton/Brillhart* abstention doctrine or, in the alternative, to stay the instant action pending the outcome of the underlying suit. (Doc. 41.) Third, Kramers have filed a motion for a status conference. (Doc. 49.) The motions are fully briefed and are ripe for review. Because Kramers' motion requests the Court to decline discretionary jurisdiction under the Declaratory Judgments Act, Kramers' motion will be addressed first.

I.   **Factual Background**

Helgeson built a new home at 3113 Peregrine Lane in the Falcon Ridge subdivision in Billings, Montana, in 2015, which the Kramers then purchased on March 1, 2016. (Doc. 22 at ¶¶ 1-2.) At the time, EMC insured Helgeson under an annual Commercial General Liability Policy (No. 4D2-51-70-16) ("Policy"). The

first policy period became effective on December 5, 2009, and the final policy period ended December 5, 2016.  (*Id.* at ¶ 5.)

Sometime in 2018, the Kramers allege they discovered issues with their home, such as doors sticking, cracks forming on drywall, and molding and tub/showers pulling away from the walls.  (Doc. 30-2 at 6.)  The Kramers thus hired Quentin Eggart, P.E., of Eggart Engineering, to perform a structural review of the home.  (Docs. 30-2 at 15-16; 30-3 at ¶ 9.)  Eggart found different elevations throughout the interior and peripheral walls, and concluded it was the result of "settlement of the subgrade of the home."  (Docs. 30-2 at 15; 30-3 at ¶¶ 9-10.)  Eggart postulated that the structural fill was consolidating or that the soil underlying the structural fill was consolidating, and recommended mitigation by way of deep foundation piers to stop further settlement of the home.  (Docs. 30-2 at 15; 30-3 at ¶ 10.)

On October 3, 2018, the Kramers submitted an adverse claim to EMC as Helgeson's insurer, seeking an investigation into their and other neighbors' claims against Helgeson, as well as confirmation of coverage.  (Doc. 30-2 at 13-14.)  While it is unclear from the record how, when, or if EMC responded to the Kramers' claim, the Kramers filed the underlying suit in state court against Helgeson later in October 2018 and amended their complaint shortly thereafter on November 14, 2018.  (Docs. 22 at ¶ 6; 30-2 at 5; 30-3 at ¶¶ 4-5.)  The underlying

suit alleges negligent construction, negligent breach of contract, recission due to a failure of consideration, breach of implied warranty of habitability, breach of the implied warranties of quality workmanship and good construction, constructive fraud, negligent misrepresentation, and negligence.  (Docs. 30-2 at 5-11; 30-3 at ¶ 11.)  Helgeson tendered its defense to EMC in October 2018, and EMC agreed to defend Helgeson under a reservation of rights.  (Docs. 22 at ¶¶ 6-8; 30-3 at ¶¶ 17-19.)

EMC filed the instant action against Helgeson one year later, on November 15, 2019, seeking a declaration of coverage under the Policy.  (Doc. 1.)  Kramers sought to intervene in EMC's federal declaratory action, along with other similarly situated homeowners with adverse claims against Helgeson for damages based on the settlement of their homes in the same subdivision.  (*See* Doc. 14 at 2.)  EMC initially objected on grounds that the other proposed intervenors were not parties to Kramers' underlying suit.  (*Id.*)  The Kramers thus filed a motion to intervene on February 10, 2020.  (Docs. 11; 12.)  EMC ultimately conceded Kramers' motion as well-taken.  (Doc. 14 at 2.)  Kramers' motion to intervene was granted on March 5, 2020.  (Doc. 18.)

The remaining homeowners did not join Kramers' motion to intervene, but instead chose to file an action against EMC and Helgeson in state court under Montana's declaratory judgment statute on March 10, 2020.  (See *Ralph and*

4

*Barbara Cook et al. v. Emp'rs Mut. Cas. Co. et al.*, Case No. DV 20-0366 (Mont. Dist. Ct. Mar. 10, 2020) (Doc. 42-1) (hereinafter "*Cook*")). Like the Kramers, the *Cook* plaintiffs alleged that they had purchased homes built by Helgeson in the same subdivision and had incurred damages from structural defects with their homes. (*Cook*, CV-20-55-SPW-TJC at Doc. 1-1 at 2.) The *Cook* plaintiffs sought a declaration that EMC is obligated to indemnify Helgeson for their claims under the same Policy at issue here. (*Id.* at 3.)

EMC then removed *Cook* from state court to this Court on April 27, 2020, and sought to consolidate the removed *Cook* action with this case. (See *Cook*, CV-20-55-SPW-TJC at Docs. 1; 11 at 13-14.) Shortly after removal, the *Cook* plaintiffs moved to remand that matter back to state court. (*Id.* at Doc. 9.) In the motion to remand, the *Cook* plaintiffs explained that they requested permission to join the instant federal declaratory action along with the Kramers, but EMC refused. (*Id.* at Doc. 10.) The remand motion was granted, remanding *Cook* back to state court on November 20, 2020. (*Id.* at Doc. 18.)

In the meantime, EMC filed its motion for summary judgment. (Doc. 30.) EMC argues that there was no "occurrence" to trigger coverage under the Policy, because no physical injury or property damage occurred during the Policy period. EMC also argues that the Policy's earth movement exclusion bars coverage for Kramers' claim.

5

Shortly after remand was granted in *Cook*, Kramers filed the present motion to dismiss under the *Wilton/Brillhart* abstention doctrine or, in the alternative, to stay proceedings pending the outcome of the underlying suit. (Doc. 41.)

Ultimately, *Cook* and the instant matter share the same coverage issue: Does Helgeson have coverage under the Policy for claims arising out of settlement of the subgrade under the homes Helgeson built in the Falcon Ridge subdivision? (*Cf.* Doc. 1 at ¶¶ 8-9 and *Cook*, CV-20-55, Doc. 17 at 2.)

The Montana State District Court recently granted summary judgment in favor of two of the *Cook* plaintiffs on this issue. The court determined that, although the plaintiffs did not notice any property damage until after the expiration of the policy period, the record supported the conclusion that the damage occurred years before it was visible, and within the policy period. The court also determined that the earth movement exclusion did not apply. Kramers requested a status conference to discuss the impact of the state court decision on this litigation. (Doc. 49.)

## II.    Kramers' Motion to Dismiss or Stay

### A.    Legal Standard

The Declaratory Judgment Act is a permissive statute in which "any court of the United States … *may* declare the rights and other legal relations of any interested party seeking such declaration …" 28 U.S.C. § 2201(a) (emphasis

added); *R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 975 (9th Cir. 2011). In *Brillhart v. Excess Ins. Co. of Am.*, the U.S. Supreme Court determined that the discretionary nature of the Declaratory Judgment Act permits courts to dismiss a declaratory judgment action when the controversy can be better settled in a pending state court proceeding. 316 U.S. 491, 495 (1942); *Wilton v. Seven Falls Co.*, 515 U.S. 277, 289-290 (1995) (affirming *Brillhart* as precedent for exercising discretion in declaratory judgments "where parallel proceedings, presenting the opportunity for ventilation of the same state law issues, were underway in state court.") Thus, under the *Wilton/Brillhart* doctrine, a district court may refrain from exercising its discretionary jurisdiction over a declaratory judgment action in the presence of a parallel state court proceeding.

The Ninth Circuit has adopted three, non-exhaustive[1] *Brillhart* factors for courts to consider when determining whether to entertain a declaratory judgment: (1) avoidance of needless determination of state law issues; (2) discouragement of

---

[1] In *Dizol*, the Ninth Circuit discussed additional considerations, such as (1) whether the state court could provide a full resolution of all the issues; (2) whether proceeding in federal court would result in an unnecessary federal determination of state law; (3) whether the case raises unresolved issues of state law better decided in a state trial court from which an appeal would go to a state appellate court; (4) whether retention of the action in federal court would encourage forum shopping; (5) whether one court is more convenient to the parties; and (6) whether removing the case from state court gives rise to comity concerns such that proceeding in federal court should be avoided. *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 n. 5 (9th Cir. 1998).

forum shopping; and (3) avoidance of duplicative litigation. *Dizol*, 133 F.3d at 1225.

"[T]here is no presumption in favor of abstention in declaratory actions generally, nor in insurance coverage cases specifically." *Id*. But "[i]f there are parallel state proceedings involving the same issues and parties pending at the time the federal declaratory action is filed, there is a presumption that the entire suit should be heard in state court." *Id.; Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361, 1366-67 (9th Cir. 1991).

### B. Discussion

#### 1. Presumption of Abstention

Kramers assert that there is a parallel state court proceeding (*Cook*) examining the same coverage issue under the same Montana state laws. In addition, Kramers argues that the foregoing presumption in favor of the suit being heard in state court applies in this case. (Doc. 42 at 7-9.) EMC responds that the parties in the *Cook* state action and the present action are different and the cases present different issues; thus, there is no presumption of deference to state courts. (Citing, *Mid-Century Ins. Co. v. Rick's Auto Body, Inc.*, 2017 WL 4896105, at *2 (D. Mont. Oct. 30, 2017)). EMC also appears to dispute that *Cook* constitutes a parallel proceeding for purposes of *Brillhart* abstention.

EMC is correct that there is no presumption in favor of abstention in this case. Kramers argue that if "there are parallel state proceedings involving the same issues, then there is a presumption that the entire suit be heard in a state court." (Doc. 42 at 7.) But as quoted from *Dizol* above, application of the presumption also requires the same parties, and that the parallel proceedings be pending at the time the federal declaratory action is filed. 133 F.3d at 1225. Neither requirement is satisfied here. *Cook* had not been initiated and was not pending at the time of the filing of the instant action, and Kramers are not parties to *Cook*.

Nevertheless, "[t]he fact that there is no presumption in favor of declining jurisdiction does not prove there is a presumption in favor of retaining jurisdiction." *Huth v. Hartford Ins. Co. of the Midwest*, 298 F.3d 800, 803 (9th Cir. 2002). To establish a parallel proceeding, the state action does not necessarily need to be pending at the time the federal case is filed. "Timing is only one consideration," and "the *Wilton/Brillhart* factors sometimes compel a court to decline to entertain an earlier-filed action in favor of a later-filed action." *R.R. St. & Co. Inc.*, 656 F.3d at 976 (citing *Wilton*, 515 U.S. at 280-82) (affirming dismissal of a federal action considering a later-filed state action). Additionally, identity of parties is not required to establish a parallel state proceeding. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Simpson Mfg. Co.*, 829 F. Supp. 2d 914,

9

923 (D. Haw. 2011). Thus, while there is no presumption in this case, *Cook* may nevertheless constitute a parallel action which compels the application of *Brillhart* abstention.

The Ninth Circuit has broadly interpreted the requirements for a parallel action for purposes of the *Brillhart* analysis. *Rick's Auto Body*, 2017 WL 4896105, at *2. "It is enough that the state proceedings arise from the same factual circumstances." *Golden Eagle Ins. Co. v. Travelers Companies*, 103 F.3d 750, 755 (9th Cir. 1996) (*overruled on other grounds by Dizol*, 133 F.3d 1220). Under this standard, *Cook* is plainly a parallel action to this litigation. The two cases involve the same factual circumstances, consisting of alleged damage to homes built by Helgeson in the Falcon Ridge subdivision resulting from settlement of the subgrade under the homes. In short, the cases are both predicated on the same or substantially similar factual allegations; they involve the same issues of state law; and they involve the same or similarly situated parties.

### 2.     Needless Determination of State Law Issues

Turning, then, to the application of the first *Brillhart* factor, "'[a] needless determination of state law' arises under several circumstances. It may involve an ongoing parallel state proceeding regarding the precise state law issue, an area of law Congress expressly reserved to the states, or a lawsuit with no compelling federal interest (e.g., a diversity action)." *757BD LLC v. Nat'l Union Fire Ins. Co.*

*of Pittsburgh, PA*, 330 F. Supp. 3d 1153, 1162 (D. Ariz. 2016) (internal quotations and citations are omitted).  All three circumstances are present here.

First, *Cook* is an ongoing state proceeding involving the same issues of law.  EMC acknowledged as much in its efforts to consolidate *Cook* with the present action, asserting "[t]he two matters involve the same legal issues, similar fact allegations, and the same major parties." (*Cook*, CV-20-55-SPW-TJC, Doc. 11 at 13-14.)  "[W]hen an ongoing state proceeding involves a state law issue that is predicated on the same factual transaction or occurrence involved in a matter pending before a federal court, the state court is the more suitable forum for a petitioner to bring a related claim."  *Am. Nat'l Fire Ins. Co. v. Hungerford*, 53 F.3d 1012, 1017 (9th Cir. 1995) (*overruled on other grounds by Dizol*, 133 F.3d 1220); *Polido v. State Farm Mut. Auto. Ins. Co.*, 110 F.3d 1418, 1423 (9th Cir. 1997) (*overruled on other grounds by Dizol*, 133 F.3d 1220).

Second, the case involves an area of law reserved to the states.  Questions of insurance coverage "are strictly the province of state law." *Great Am. Assurance Co. v. Discover Prop. and Cas. Ins. Co.*, 779 F. Supp. 2d 1158, 1163 (D. Mont. Apr. 26, 2011); *Cont'l Cas. Co. v. Robsac Indus.*, 947 F.2d 1367, 1371 (9th Cir. 1991) (*overruled on other grounds by Dizol*, 133 F.3d 1220) ("Moreover, this case involves insurance law, an area that Congress has expressly left to the states through the McCarran-Ferguson Act.").

Finally, there is no federal question in this case, and the matter presents no compelling federal interest. Where, as here, "the sole basis of jurisdiction is diversity of citizenship, the federal interest is at its nadir, . . . the *Brillhart* policy of avoiding unnecessary declarations of state law is especially strong . . .." *Robsac*, 947 F.2d at 1371.

EMC nevertheless argues that the first *Brillhart* factor weighs against dismissal because the issues in this action are not novel or unsettled questions of state insurance law. (Citing *Sarrazin v. Prop. & Cas. Ins. Co. of Hartford*, 2014 WL 12600450 (D. Mont. June 13, 2014)). EMC argues that when a coverage issue is based on established case law or statute, it should be a "rare occurrence" that a court should decline jurisdiction. (Quoting *Rick's Auto Body*, 2017 WL 4896105, at *3). EMC contends that this case involves two issues of established Montana law: (1) what constitutes an "occurrence" based upon the "physical injury rule," and (2) application of the "earth movement" exclusion. EMC argues there is nothing "novel" or "unsettled" about these issues under Montana law, and both have previously been determined in EMC's favor.

EMC's argument is adequately refuted by the decision of the Montana State District Court in *Cook*. Far from being settled issues of Montana law, the state court decided both of these issues directly contrary to EMC's position in this case. EMC argues that the court's decision is incorrect and vows to appeal the court's

12

decision to the Montana Supreme Court. But that only underscores the conclusion that these issues are not settled issues of Montana law, and the Montana courts provide the appropriate forum for the determination of important issues of state law.

Therefore, the Court finds the first *Brillhart* factor weighs in favor of abstention. *Dizol*, 133 F.3d at 1226. This is a key factor in the *Brillhart* analysis. The Ninth Circuit has recognized that "needless determination of state law issues alone many support [dismissal]." *R.R. St. & Co. Inc.,* 656 F.3d at 975; *Huth*, 298 F.3d at 802-04.

### 3. Forum Shopping

Forum shopping is disfavored under *Brillhart* and justifies declination of jurisdiction. *Robsac*, 947 F.2d at 1371. "Forum shopping occurs when a party selects a federal court to achieve a better outcome or gain a tactical advantage unavailable in the state court action." *Rick's Auto Body*, 2017 WL 4896105, at *3. "Defensive" or "reactive" declaratory judgment actions may signal forum shopping. *Id.*; *Robsac*, 947 F.2d at 1371. In *Robsac*, the Ninth Circuit explained that "[a] declaratory judgment action by an insurance company against its insured during the pendency of a non-removable state court action presenting the same issues of state law is an archetype of what we have termed 'reactive' litigation." *Robsac*, 947 F.2d at 1372.

Kramers argue that EMC was forum shopping when it failed to intervene or join in the underlying suit in state court, filed this action in federal court instead, objected to the *Cook* plaintiffs intervening in the instant case, and then removed *Cook* from state court after its filing with the intention of consolidating the actions. (Doc. 42 at 9-11.)

EMC argues it is not forum shopping, because filing in a federal forum is its constitutional and statutory right. (Doc. 43 at 7-9.) EMC asserts that the *Cook* action was instead a reactive filing in state court, and counters that both the Kramers and the *Cook* plaintiffs are engaging in forum shopping in state court. (*Id.* at 9-10.)

The Court finds this factor to be neutral. The parties to this case, as well as in *Cook*, have all done a fair amount of jurisdictional wrangling to secure what they believe would be a more favorable forum. EMC has demonstrated its preference through the filing of this action in federal court, and then attempting to remove and consolidate the *Cook* action with this case. The Kramers and the *Cook* plaintiffs have similarly shown their preference to remain in state court through filing this motion, filing the *Cook* declaratory judgment action in state court, and then resisting efforts to remove that action to this court. Thus, as the Ninth Circuit observed in *R.R. St. & Co. Inc.*, "both parties appear to have engaged in some defensive maneuvering or 'procedural fencing.'" 656 F.3d at 976.

Nevertheless, it does not appear that EMC engaged in forum shopping, as contemplated by the *Brillhart* factors analysis. Again, *Cook* had not been filed at the time of the initiation of this action; thus, it cannot be considered as reactive litigation. It also cannot be considered as a reactive action to the underlying Kramers/Helgeson action, since the two cases do not involve the same issues of state law.

As pointed out by this Court in *Sarrazin* and *Rick's Auto Body,* a federal forum is assured by federal statute and the Constitution. *Sarrazin*, 2014 WL 12600450, at *3; *Rick's Auto Body*, 2017 WL 4896105, at *3. Further, it is not unusual for insurers to seek declaratory judgment in federal court on its duty to defend and indemnify, while the underlying claim against the insured is being litigated in state court. See, e.g., *Northfield Ins. Co. v. Civic Ctr. Hotel, LLC*, 239 F. Supp. 3d 1162, 1172 (N.D. Cal. 2017). Thus, the circumstances of this case do not support a finding of forum shopping.

4. **Duplicative Litigation**

The third *Brillhart* factor concerns the policy of avoiding duplicative litigation and "addresses the concern that a federal and state court may reach inconsistent decisions on the same issue." *Rick's Auto Body*, 2017 WL 4896105, at *3 (citing *R.R. St. & Co. Inc.*, 656 F.3d at 978); *Dizol*, 133 F.3d at 1225. In *Robsac*, the Ninth Circuit found duplicative litigation when a federal declaratory

15

suit was the virtual "mirror image" of the state suit. 947 F.2d at 1373. That is the case here.

As discussed above, EMC conceded the point in its attempt to consolidate the *Cook* action with the instant case, and acknowledged that the two matters involve the same legal issues, fact allegations, and major parties. (*Cook*, CV-20-55-SPW-TJC, Doc. 11 at 13-14.) Any declaration of rights this Court can adjudicate under the Policy in relation to the Kramers' claims can be resolved by the state court. Thus, "permitting the present action to go forward would waste judicial resources in violation of the third *Brillhart* factor." *Robsac*, 947 F.2d at 1373.

Additionally, continuing with this case in federal court would result in the litigation and determination of these issues of state law on two different tracks. The issues in *Cook* would be determined by the Montana State District Court, and ultimately by the Montana Supreme Court; the identical issues here would be determined by this Court, and any appeal would be taken to the Ninth Circuit. This results not only in a waste of judicial resources, but also the risk of inconsistent results of substantially the same claims.

Therefore, the third *Brillhart* factor favors abstention.

/ / /

/ / /

### 5. Other Factors

As previously mentioned, the Ninth Circuit also suggested in *Dizol* that other factors can be considered, several of which are relevant here. The state court can, for example, provide full resolution of all issues. Kramers can either seek to intervene in the pending declaratory judgment action, or the parties can file an independent declaratory judgment action, pursuant to Mont. Code Ann. § 27-8-201. Further, proceeding in federal court would result in an unnecessary federal determination of state law regarding construction of the policy provisions. Also, these unresolved issues of state law are better decided by the Montana District Courts initially, with an ultimate determination to be made by the Montana Supreme Court. Finally, "[i]n the insurance coverage context, comity concerns are 'particularly weighty,' such that jurisdiction is found not warranted in 'the general run of insurance coverage cases.'" *Great Am. Assurance Co.*, 779 F. Supp. 2d at 1163 (quoting *Emp'rs Reinsurance Corp. v. Karussos*, 65 F.3d 796, 799 (9th Cir. 1995) (*overruled on other grounds by Dizol*, 133 F.3d 1220)).

### C. Conclusion

For the foregoing reasons, the Court finds that, on balance, the *Wilton/Brillhart* factors weigh in favor of dismissal of this action. Therefore, the Court will grant Kramers' motion to dismiss and decline discretionary jurisdiction under 28 U.S.C. § 2201. Dismissal will be without prejudice.

## III. Other Pending Motions

Given the Court's finding under the *Wilton/Brillhart* abstention doctrine, the Court finds EMC's motion for summary judgment and Kramers' motion for status conference to be moot. Therefore, the Court will deny both motions.

## IV. Conclusion

For the foregoing reasons IT IS ORDERED THAT:

1. EMC's Motion for Summary Judgment (Doc. 30) is DENIED as MOOT;

2. Kramers' Motion for Status Conference (Doc. 49) is DENIED as MOOT; and

3. Kramers' Motion to Dismiss (Doc. 41) is GRANTED, without prejudice.

**IT IS ORDERED**.

DATED this 13th day of October, 2021.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge